A96A1350. GREAT WESTERN PRESS, INC. v. ATLANTA FILM CONVERTING COMPANY.
(479 SE2d 143)

BEASLEY, Chief Judge.

Defendant Great Western Press appeals the trial court's award of summary judgment to plaintiff Atlanta Film Converting Company. Summary judgment is proper only when the moving party demonstrates that there is no genuine issue of material fact and that the undisputed facts entitle the movant to judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The non-

moving party "is entitled to all reasonable doubts and favorable inferences that may be drawn from the evidence." *Mixon v. Phoenix Landscaping*, 136 Ga. App. 344, 345 (221 SE2d 225) (1975).

So viewed, the record shows a chain of production and distribution of wrappers for "Lion King" trading cards, with Atlanta Film producing the wrappers by order of Great Western, which distributed the wrappers to Anderson News Company (ANCO) through contract with SkyBox International.

On June 8, 1994, Great Western placed a purchase order with Atlanta Film for the production of wrappers with universal product codes (UPCs), which indicated a need date of June 20. Atlanta Film began delivery of the products on June 22 and the entire shipment arrived by June 24. On June 27, the wrappers were delivered directly to ANCO. SkyBox received a call from ANCO on June 30, indicating that the UPCs were not scanning properly and that ANCO would not be able to sell the product to its consumers. To avoid a $360,000 loss, ANCO "restickered" the products with new UPCs and charged SkyBox approximately $35,000 for this process. SkyBox passed the charge on to Great Western. The record does not show when Great Western was notified of the restickering.

On August 4, Atlanta Film telephoned Great Western to inquire why payment for the wrappers had not been made. Great Western replied that the UPCs had not scanned properly and that it charged back $35,000 for the restickering. Great Western refused to pay, and on September 8 Atlanta Film gave Great Western notice and demand for payment. None was made, and suit was filed on January 25, 1995. Great Western counterclaimed for breach of express and implied warranties. The trial court granted Atlanta Film's motion for summary judgment both as to its claim and to the counterclaim and ordered Great Western to pay Atlanta Film the full amount.

1. Great Western enumerates as error the court's dismissal of its counterclaim in acceptance of Atlanta Film's argument that Great Western did not provide reasonable notice as required under OCGA § 11-2-607 (3) (a): "The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." The question of reasonableness of notice is ordinarily a factual one, and summary adjudication is appropriate only if the uncontroverted facts establish that the moving party is entitled to recover as a matter of law. *Intl. Multifoods Corp. v. Nat. Egg Products &c.*, 202 Ga. App. 263, 266 (4) (414 SE2d 253) (1991).

Great Western contends there is a genuine issue of material fact as to whether its August 4 notice was reasonable. Atlanta Film argues the policies behind OCGA § 11-2-607 support summary judgment in its favor: "The purpose of the rule . . . is to defeat commer-

cial bad faith." (Citation and punctuation omitted.) *Intl. Multifoods,* supra at 266 (4). Notice of breach opens the door for settlement negotiations and minimizes the possibility of prejudice by giving the seller an opportunity to cure the defect or reduce the damages at an early stage. *Hudson v. Gaines,* 199 Ga. App. 70, 72 (2) (403 SE2d 852) (1991); *Oden & Sims Used Cars v. Thurman,* 165 Ga. App. 500, 501 (1) (301 SE2d 673) (1983); *Jones v. Cranman's Sporting Goods,* 142 Ga. App. 838, 840 (1) (a) (237 SE2d 402) (1977). A buyer who buys goods, sells them and keeps the proceeds and then claims the goods were defective without giving the seller notice deprives the seller of the right to inspect, test and sample the goods to ascertain facts and preserve evidence. See generally White & Summers, Uniform Commercial Code, pp. 611-619, § 11-10 (4th ed. 1995); 2 Anderson, Uniform Commercial Code, p. 120, § 2-607:4 (3rd ed. 1981). The Official Comment to the Uniform Commercial Code § 2-607 states that content of the notice should let the seller know that the transaction is troublesome and need be watched. *Jones,* supra at 840.

Atlanta Film argues it had no notice that the transaction was troublesome and that it was given no opportunity to investigate the problem, to challenge the assertion that the UPCs were inaccurate, to resticker the codes or otherwise cure the defect at a lower cost, or to reduce its damages.

Great Western counters that, notwithstanding the policies behind OCGA § 11-2-607, Atlanta Film had no right to cure since the defective goods were accepted after being delivered late. We agree. OCGA § 11-2-508 (1) only permits a seller to cure defects if the goods have been rejected and if "time for performance has not yet expired." Time was of the essence, and by the time of delivery, the time for performance had expired. Atlanta Film says the delay was justified by actions of the buyer, but this is a factual matter for a jury to hear and weigh.

As delivered, the goods were untimely and unusable. A jury could also find that it was reasonable for ANCO, in order to mitigate damages, to correct the UPC defect in the manner and at the time it did so, and that Atlanta Film's lack of opportunity to investigate, to challenge the assertion of the inaccuracy, or otherwise to reduce its damages was occasioned by its late delivery. Great Western should also be permitted to present evidence of when it received notice of the defect. These are factual matters beyond the purview of summary judgment.

Atlanta Film cites *Fruin-Colnon Corp. v. Air Door,* 157 Ga. App. 804 (278 SE2d 708) (1981), but it is distinguishable. The seller sold an allegedly nonconforming frame to the buyer, who then corrected the frame without notice to the seller and charged back the cost. The trial court, sitting as *factfinder,* found that the notice was not reason-

able when the buyer took two weeks to notify the seller of the defect, how it had been corrected, and that it was charging the seller the cost of correcting the defect. Id. at 808 (3).

Here, the court made a *legal* determination at summary judgment stage that the notice was unreasonable and that plaintiff Atlanta Film was accordingly entitled to judgment as a matter of law, but the record contains too many factual questions to have permitted summary adjudication.

2. In its motion for summary judgment, Atlanta Film contended that the August 4 conversation in reality constituted no notice, and that Great Western's counterclaim for breach of warranty was thus barred since the goods had been accepted. It cited OCGA § 11-2-606 and *Contract Sales & Svc. Intl. v. American Express &c. Co.*, 216 Ga. App. 61 (453 SE2d 62) (1994). Great Western enumerates as error the trial court's acceptance of this reasoning, pointing to OCGA § 11-2-607 (2), which states that acceptance does not impair any other remedy provided by this article for nonconformity, and OCGA § 11-2-714, which provides that a buyer can recover damages for a breach of warranty even though the buyer accepted the defective goods.

Whether OCGA § 11-2-607 was served by Great Western's notice to Atlanta Film of the defect over a month after it had been corrected, and only when payment was demanded, is a jury question. Thus, the trial court's conclusion that, as a matter of law, Great Western's notice to Atlanta Film was not within a reasonable time, that Great Western's claim for breach of warranties was accordingly barred, and that a money judgment against Great Western was proper is accordingly reversed.

*Judgment reversed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED DECEMBER 5, 1996.

*Jones, Day, Reavis & Pogue, Michael J. McConnell, Tilden R. Reid II*, for appellant.

*Gerber & Gerber, Bernard M. Gerber*, for appellee.