Rachel E. HEBRON, Plaintiff–Appellant,

v.

AMERICAN ISUZU MOTORS, INCORPORATED, Defendant–Appellee.

and

Jane Doe, Defendant.

No. 94–1745.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1995.

Decided July 28, 1995.

---

**ARGUED:** Deborah Aileen Lisker, Slenker, Brandt, Jennings & Johnston, Fairfax, VA, for appellant. Christopher Channing Spencer, McGuire, Woods, Battle & Boothe, Richmond, VA, for appellee. **ON BRIEF:** John H. Johnston, Slenker, Brandt, Jennings & Johnston, Fairfax, VA, for appellant. Dana J. Finberg, McGuire, Woods, Battle & Boothe, Richmond, VA, for appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MURNAGHAN and Senior Judge BUTZNER joined.

## OPINION

NIEMEYER, Circuit Judge:

In June 1991, Rachel E. Hebron was driving her 1991 model Isuzu Trooper truck on Interstate 395 in Alexandria, Virginia, when she was "cut off" without warning by a vehicle entering her lane directly in front of her. Hebron braked and turned the steering wheel to the right to avoid a collision. Her truck swerved and then rolled over, causing Hebron to sustain permanent injuries. The

driver of the other vehicle failed to stop and has never been identified.

Two years later, in June 1993, after the Isuzu truck had been disposed of, Hebron sued American Isuzu Motors, Inc., for $750,-000 in damages, giving American Isuzu its first notice of her claim on July 12, 1993, when it received a copy of her complaint. The complaint alleged that the Isuzu truck was not safe "to drive upon the public highways" and that American Isuzu breached the implied warranty of merchantability given when its dealer sold Hebron the truck in December 1990.

On the eve of trial, after discovery had been completed, American Isuzu renewed an earlier-filed motion for summary judgment based in part on Hebron's failure to provide American Isuzu with "reasonable notice" of her claim in violation of Virginia's Uniform Commercial Code, § 8.2–607(3)(a) of the Virginia Code. The district court granted the motion, observing that Hebron failed to provide notice for over two years without any explanation and during that period disposed of the truck, thus "depriving [American Isuzu] of any opportunity to inspect the vehicle to prepare its defense." The court explained that even though the reasonableness of notice is usually a factual question, in this case "Hebron's two-year delay before notifying [American Isuzu] of the alleged breach of warranty is unreasonable as a matter of law." The court relied on two cases in which merchant buyers were found, as a matter of law, to have given insufficient notice: *Smith–Moore Body Co. v. Heil Co.*, 603 F.Supp. 354, 358 (E.D.Va.1985) (seven-month delay in giving notice held to be unreasonable), and *Begley v. Jeep Corp.*, 491 F.Supp. 63, 66 (W.D.Va.1980) (delay of two years and five months held to be unreasonable). In both cases, the seller was deprived of an opportunity to investigate the accident in a timely manner and to inspect the allegedly defective product.

I

On appeal, Hebron contends that § 8.2–607(3)(a) of the Virginia Code applies only to a contractual relationship between "commercial parties," and that the district court erred in failing to recognize that hers is a personal injury claim made by a retail buyer. She argues that "the notice requirement of the Uniform Commercial Code was not enacted to control product liability personal injury litigation," relying primarily on *Hill v. Joseph T. Ryerson & Son,* Inc., 165 W.Va. 22, 268 S.E.2d 296 (1980) (holding that defense of lack of notice is unavailable in product liability actions for personal injuries under West Virginia Uniform Commercial Code provision). However, Hebron cannot provide any authority from Virginia in support of this contention.

■ Section 8.2–607(3)(a) of the Virginia Code, which remains consistent with the language of § 2–607 of the Uniform Commercial Code, provides:

> (3) Where a tender has been accepted
>
> > (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; . . . .

The term "buyer" is defined as "a person who buys or contracts to buy goods." Va. Code § 8.2–103(1)(a). The word "person" in that definition is not restricted to commercial parties or merchants, and the definition does not explicitly exclude retail consumers. Since "merchant" is a defined term under the Uniform Commercial Code, *see* Va.Code § 8.2–104(1), that term surely would have been used in the notice provision in § 8.2–607 if such a restrictive application were intended. Any doubt about whether the term "buyer" in § 8.2–607(3)(a) includes both retail consumers and merchant buyers is resolved by the official comment to § 8.2–607(3)(a) which addresses both merchant buyers and retail buyers. Comment 4 provides in part:

> The time of notification is to be determined by applying commercial standards to a *merchant buyer.* "A reasonable time" for notification from *a retail consumer* is to be judged by different standards. . . .

Va.Code § 8.2–607(3)(a), cmt. 4 (emphasis added). Thus, even though the requirement of reasonable notice may be more strictly applied to merchant buyers than to retail

consumers, the term "buyer" as used in § 8.2–607(3)(a) clearly applies both to merchant buyers and retail consumers. Retail consumers are, under the plain meaning of the word, "persons" who buy or contract to buy goods. *See* Va.Code § 8.2–103(1)(a). *See also* Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 2–607:27, at 137 (3d ed. 1983) ("When the buyer sues the seller for *personal injuries* based upon a breach of warranty it is necessary that he had complied with the notice provision." (emphasis added)); *Chestnut v. Ford Motor Co.,* 445 F.2d 967, 969 (4th Cir.1971) (observing generally that lack of notice of a breach is a defense to a warranty claim) (*dictum* ); *Belton v. Ridge Tool Co.,* No. 90–1406, 1990 WL 116783 (4th Cir. June 4, 1990) (unpublished) (Va.Code § 8.2–607(3)(a) bars any remedy for personal injuries when notice is delayed 19 months without explanation).

In the absence of any indication that § 8.2–607(3)(a) was intended to apply only to merchant buyers, we hold that it applies to all buyers of goods, including retail consumers.

## II

■ Hebron also contends that the question of whether she gave American Isuzu reasonable notice of the breach of warranty is a question of fact reserved for the jury. She correctly notes that a question of reasonableness is ordinarily one of fact. But this is so only within a limited range of factual circumstances. The district court, recognizing the general rule, found that in this case the two-year unexplained delay in giving notice, coupled with the plaintiff's disposal of critical evidence, was unreasonable as a matter of law. We agree.

■ Hebron waited two years to notify American Isuzu of her claim, and when she did, she had already disposed of the vehicle. Moreover, she produced no evidence about

her vehicle or any claimed defect. She took no pictures, had no inspection conducted, and retained nothing from the vehicle after the accident.[1] Finally, she has offered no explanation for the delay, despite having been invited to do so in response to the motion for summary judgment. One of the important functions of the summary judgment process is to elicit the positions of the parties and have them tested under applicable law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). In the circumstances of this case, we hold that a two-year delay in giving notice under § 8.2–607(3)(a) is unreasonable as a matter of law where no explanation for the delay is provided and actual prejudice is sustained. The prejudice caused to American Isuzu goes to the heart of the statute's purpose.

■ The essence of Hebron's claim is that implied as part of the sale of the Isuzu truck was an implied promise that the truck was fit for the ordinary purposes for which such goods are used. *See* Va.Code § 8.2–314(2)(c). But also implied, through the same commercial code that grounds her claim, is the requirement that when the buyer has reason to believe that this promise was breached, she must notify the seller within a reasonable time. This obligation is made a condition of any remedies. *See* Va. Code § 8.2–607(3)(a). Since Hebron chose to sue only for breach of implied warranty of merchantability and thus elected only to invoke rights arising out of her contractual relationship with American Isuzu, *see, e.g., Harris v. Hampton Roads Tractor & Equipment Co.,* 202 Va. 958, 121 S.E.2d 471, 473–74 (1961) (implied warranty claim is essentially contractual), she was required, as a condition to enforcing the warranty, to give "reasonable notice" after the breach was discovered. Such notice serves the important functions of promoting the voluntary resolution of disputes and minimizing prejudice to the seller

---

1. Hebron argues that her claim is based on a defective design and that any copy of the truck in question could be evaluated for trial. Even in a design defect claim, however, the plaintiff must

prove that the defect caused her injuries. Any potential defense for American Isuzu that Hebron's truck had some other problem or condi-

from the passage of time.[2] As stated in comment 4:

> The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

Va.Code § 8.2–607(3)(a), cmt. 4. These purposes were defeated by Hebron's failure to give reasonable notice to American Isuzu in this case.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED.*

tion which caused it to roll over was lost along with the truck.

2. Another function of the notice rule, which is not implicated here, is enabling the seller to cure the breach. This policy relates principally to commercial transactions where losses from defective goods can be minimized. *See Maybank v. S.S. Kresge Co.,* 302 N.C. 129, 273 S.E.2d 681, 684 (1981).